**KIM & BAE P.C.**
Christine M. Bae (CB-4384)
Carlton R. Asher, Jr. (CA-8530)
2160 North Central Road, Suite 303
Fort Lee, New Jersey 07024
Tel: (201) 585-2288
Fax: (201) 585-2246
E:cbae@kimbae.com
E:carltonasher@gmail.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------X
AIRTECH INTERNATIONAL INC.,

                  Civil Case No. 22 - 668

        Plaintiff,

                  **COMPLAINT FOR**
                  **INJUNCTIVE RELIEF**
    -against-            **AND DAMAGES**
                  **JURY TRIAL DEMANDED**

BYUNG CHAN YIM A/K/A ROY YIM,
HYO SUN KIM,
ASSURED COMPONENTS LLC,
SENSA TECHNETICS LLC, GENUINE
AVIATION LLC, RFWAVE LAB INC., RFwave
ARC-TECH INC., HANS AEROSPACE INC.,
JOHN DOES 1-10, AND XYZ CO. 1-10,

        Defendants.
-----------------------------------------------------X

      AIRTECH INTERNATIONAL INC. ("Plaintiff" or "Airtech"), by and through its

attorneys, Kim & Bae, P.C., upon knowledge with respect to itself and its own actions and upon

information and belief as to all other matters, complaining of BYUNG CHAN YIM a/k/a ROY

YIM ( "Defendant Yim" or "Yim"), HYO SUN KIM ("Defendant Kim" or "Kim"), ASSURED

COMPONENTS LLC ("Assured"), SENSA TECHNETICS LLC ("Sensa"), GENUINE

AVIATION LLC ("Genuine"), RFWAVE LAB INC. ("Rfwave"), ARC-TECH INC. ("Arc-

Tech") and HANS AEROSPACE INC. ("Hans") (collectively "Defendants"), brings this action

seeking damages and injunctive relief against Defendants for conversion, theft of corporate funds, breach of fiduciary duty, quantum meruit, constructive trust, fraud, tortious interference with contract, accounting, civil conspiracy, violations of the Computer Fraud and Abuse Act (18 U.S.C. §1030) and violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1964), hereby alleges as follows:

## INTRODUCTION

1.      In this action, Plaintiff seeks to recover damages and injunctive relief against its former employee, defendant Yim and his co-conspirators for fraud, conversion, other violations and breaches of duty and a pattern of racketeering activities all arising from carefully calculated and designed schemes to perpetrate fraud on Airtech.  Airtech is a New Jersey company engaged in selling defense and aerospace parts.  Defendant Yim is a former general manager employed by Airtech from approximately June 2005 to September 30, 2021.

2.      During his employment with Plaintiff, among other things, defendant Yim embezzled and stole hundreds of thousands of dollars from Airtech by creating false expense reimbursement receipts.  Yim's deceitful and illegal activity relating to the use of false expense reimbursement receipts began in or about 2014 and continued until February of 2020 as a result of which Yim and his co-conspirators improperly obtained from Plaintiff a total sum discovered to date of approximately $111,929.92

3.      When Yim was caught by Plaintiff engaging in the aforesaid fraudulent and illegal conduct on February 3, 2020, Yim began yet another scheme to defraud Airtech by forming various companies in multiple states to submit false and grossly inflated invoices to Airtech.  Yim did so with the aid of his mistress, defendant Hyo Sun Kim.  Kim was

2

the nominal owner of all of the companies formed for their illegal activities.  Kim conspired with Yim to submit fake invoices to Airtech for the phony sales and fictitious commissions under the guise of the different entities that Kim and Yim created.  Through various illegal acts hereinafter set forth, Defendants improperly obtained over $500,000 in ill-gotten gains.[1]

4.     Furthermore, Airtech discovered after Yim's resignation on September 30, 2021, that he stole all of the data from Airtech's computer systems which contain confidential and vital customer information and critical operational data, and using this data Yim began to secretly and improperly conduct business with Airtech's customers directly in competition with Airtech.  Such illegal conduct continues to this day.

5.     The stolen business records and data which Yim stole from Airtech contain highly sensitive and confidential information pertaining to Airtech's trade secrets, operation, clients, and even governmental secrecy.[2]

6.     Without this Court's intervention, Plaintiff will be irreparably and permanently damaged in its reputation and its ability to carry out its business.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §§ 1030, 1962 and 1964.  Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

---

[1] There is an ongoing audit of the books and accounting to determine the magnitude of Defendants' larceny and other wrongdoing.

[2] For example, certain of the information contained in Airtech's computer systems, as Yim well knows, is covered by non-disclosure agreements between Airtech and third-parties which obligates Airtech to strict confidentiality of such information.

8.      Venue is proper in this district pursuant to 28 U.S.C.§1391(b) because the events that gave rise to this action occurred within this district and Defendants reside within this district.

## PARTIES

9.      Plaintiff, AIRTECH INTERNATIONAL INC. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 2 Piermont Road, Cresskill, NJ 07626.

10.     Defendant BYUNG CHAN YIM A/K/A "ROY YIM" resides in the State of New Jersey, with his last known address located at 5 Kings Court, Fort Lee, NJ 07024.

11.     Defendant HYO SUN KIM resides with defendant Yim, in the State of New Jersey, with her last known address located at 5 Kings Court, Fort Lee, NJ 07024.

12.     Defendant ASSURED COMPONENTS LLC is a limited liability company formed and organized under the laws of the State of New Jersey with its places of business located at 18-20 Lackawanna Plaza, Suite 300, Montclair, NJ 07042 and 5 Kings Court, Fort Lee, NJ 07024.

13.     Defendant SENSA TECHNETICS LLC is a limited liability company formed and organized under the laws of the State of Tennessee with its places of business located at 6000 Poplar Avenue, Suite 252, Memphis, TN 38119 and 5 Kings Court, Fort Lee, NJ 07024.  Sensa was dissolved on August 11, 2021 and currently in liquidation.

14.     Defendant GENUINE AVIATION LLC is a limited liability company formed and organized under the laws of the State of Florida with its places of business located at 4651 Salisbury Road, Suite 400, Jacksonville, FL 32256 and 5 Kings Court, Fort Lee, NJ 07024.

15.     Defendant RFWAVE LAB INC. is a corporation formed and organized under the laws of the State of Florida with its places of business located at 110 Front Street, Suite 300, Jupiter, FL 33477 and 5 Kings Court, Fort Lee, NJ 07024.

16.     Defendant ARC-TECH INC. is a corporation formed and organized under the laws of the State of Florida with its places of business located at 6303 Blue Lagoon Drive, Miami, FL 33126 and 5 Kings Court, Fort Lee, NJ 07024.

17.     Defendant HANS AEROSPACE INC. is a corporation formed and organized under the laws of the State of New Jersey with its places of business located at 2225 Lemoine Avenue, Fort Lee, NJ 07024 and 5 Kings Court, Fort Lee, NJ 07024.

**FACTS COMMON TO ALL CAUSES OF ACTION**

18.     Plaintiff Airtech is a company engaged in the business of selling defense and aerospace materials, systems, and other electrical/mechanical parts.  It has been in business since 2002 and currently has approximately 10 employees.  Airtech's customers are companies based in Korea that represents the government of South Korea's defense and other military departments.  Due to the sensitive nature of Plaintiff's business, confidentiality and protection of information is critical to its business.

19.     Airtech's business consists of 1) purchasing general parts necessary for defense and aircraft and 2) finding and locating different vendors to build and manufacture parts that are tailored to its customers' needs ("Proprietary Items"). Accordingly, Airtech's business is highly concentrated, particular, and specialized.

20.     Defendant Yim began his employment with Airtech in or about June 2005.  He began as a system programmer, but over the years, he gained the trust of Airtech and its

owner, Mr. Jin Lee ("Mr. Lee") and was promoted to the position of General Manager with full authority, among other things to execute orders to buy and sell inventory; issue and sign corporate checks; approve or deny compensations to employees, contractors, and salespersons; review, approve and pay employees' expense reimbursement; and view, enter and change the ledgers in Airtech's accounting and books of account.  Yim was in charge of all of Airtech's operating system and was considered and held out to be the chief operating officer of Airtech, and the man in charge when Mr. Lee was absent, until September 30, 2021, when he abruptly resigned with Airtech.

### Defendants' Scheme to Defraud

**a.**    **Fake Expense Reimbursement Vouchers**

21.    During his employment, defendant Yim was given the authority to issue and sign checks on the Airtech's bank account.  He also had the authority to approve and pay employee expense reimbursement forms.[3]

22.    On or about February 3, 2020, Airtech discovered that some of the expense reimbursement forms submitted by Yim were inflated containing fake bogus receipts as follows:

| Check Date | Amount Yim Actually Paid | Amount Yim Claimed in Reimbursement | Items actually purchased |
|---|---|---|---|
| 1/14/20 | $663 | $13,175 | Integrated circuits from Funklind |
| 1/21/20 | $4,535 | $11,500 | EPM3128ATI100-10 from Analogic Logistics Limited |
| 1/27/20 | $2,250 | $19,375 | OSC1758-400B from Regalo |

---

[3] From time to time, the employees of Airtech were reimbursed after purchasing inventory and other equipment necessary for Plaintiff's business.

| Total: | $7,448 | $44,050 |

23.     When Mr. Lee confronted defendant Yim with the above transactions, Yim stated that he took the money wrongly and that he will reimburse Airtech for it.  Thereafter, on February 4, 2020, Yim issued a check in the amount of $12,100 to Airtech representing a partial payment for the wrongful taking.

24.     At that time, Yim had worked for almost 15 years at Airtech gaining substantial knowledge and experience in conducting Airtech's business.  As such, Yim was considered an indispensable member of Airtech and Mr. Lee did not terminate Yim, but stripped him of his check signing authority.

25.     Thereafter, Yim continued his employment until his sudden and unexpected resignation on September 30, 2021.

26.     Following his resignation, Airtech accidentally learned of Yim's wrongdoings and discovered that there was a history and pattern of Yim's submission of reimbursement vouchers with fake receipts dating back from 2014 to 2020.

27.     The false and misleading vouchers discovered so far are set forth below:

| Check Date | Amount Yim Actually Paid | Amount Yim Claimed for Reimbursement | Items purchased |
|---|---|---|---|
| 6/10/14 | $360 | $3,050 | Item OPA512SM |
| 9/19/14 | $540 | $5,025 | Item OPA512SM |
| 6/24/15 | $720 | $5,200 | Item OPA512SM |
| 10/15/15 | $1,226 | $5,313 | Item SP8830A |
| 10/20/15 | $692.78 | $2,309 | Item 622-4039-006 |
| 5/2/16 | $714 | $8,400 | Item OP07AJ/883B |
| 9/9/16 | $720 | $5,200 | Item OPA512SM |
| 1/25/17 | $5,142.96 | $8,910 | Item 4798 |
| 4/13/17 | $720.00 | $5,706.40 | Item OPA512SM |

| | | | |
|---|---|---|---|
| 9/24/18 | $1,985 | $14,040 | Part EP1K100QI208-2 from Regalo |
| 5/28/19 | $500 | $11,250 | Integrated circuits from GTZ |
| 9/10/19 | $500 | $14,745 | Integrated circuits from GTZ |
| 1/14/20 | $663 | $13,175 | Integrated circuits from Funklind |
| 1/27/20 | $2,250 | $19,375 | Part OSC1758-400B from Regalo |
| 1/21/20 | $4,535 | $11,500 | EPM3128ATI100-10 from Analogic |

----------------------------------------------------------------------------------------------------------

Total       $21,268.74       $133,198.40       The difference $111,929.66

28.     In each such instance, Yim created fake receipts and invoices and submitted them to Airtech.  He then utilized his authority to approve theses fake receipts and invoices and Airtech paid each and every one of the false reimbursement vouchers so submitted by Yim. Indeed, most of the checks were signed by Yim himself during Mr. Lee's absence. [4]

**b. Formation of Sham Companies to Deal with Airtech**

29.     On or about February 5, 2020, two days after his fake reimbursement scheme was discovered but while still working at Airtech, Yim created defendant Assured which was formed with a single member, defendant Hyo Sun Kim and controlled by both Yim and Kim.

30.     On or about October 15, 2020, while still working at Airtech, Yim created defendant Sensa which was formed with a single member, defendant Hyo Sun Kim and controlled by both Yim and Kim.

31.     On or about December 14, 2020, while still working at Airtech, Yim created defendant Genuine which was formed with a single member, defendant Hyo Sun Kim and controlled by both Yim and Kim.

---

[4]Airtech's investigation of Yim's scheme to issue and pay fraudulent receipts and theft relating to the expense reimbursement is ongoing and additional such instances may be discovered.

32.    On or about April 21, 2021, while still working at Airtech, Yim created defendant RFWave, which was formed with a single member, defendant Hyo Sun Kim and controlled by both Yim and Kim.

33.    On or about May 3, 2021, while still working at Airtech, Yim created defendant Arc-Tech which was formed with a single shareholder, defendant Hyo Sun Kim and controlled by both Yim and Kim.

34.    On or about September 27, 2021, three days before his last day at Airtech, Yim created defendant Hans which is owned by Yim and controlled by both Yim and Kim.

35.    During his employment with Airtech, Yim began using Sensa, Genuine, RFWave, and Arc-Tech (the "Sham Companies") to transact business with Airtech and use Assured and Hans (the "Adversary Companies") to divert business away from Airtech.  All or substantially all of the Sham Companies and the Adversary Companies maintained virtual or front offices for his and their business, yet Yim was crafty and egregious enough to even receive grants from the Small Business Emergency Assistance Grant Program using these companies.

36.    Yim used the Sham Companies to sell products to Airtech at a grossly inflated price.  He arranged for the Sham Companies to be presented as legitimate and unaffiliated sellers to Airtech.   Whenever there was a need to purchase a part, Yim directed Airtech employees to purchase the parts from the Sham Companies.

37.    Thereafter, Yim created fake and fraudulent invoices from these Sham Companies and sent these invoices through email to Airtech.  Upon receipt of the fraudulent invoices, Airtech paid them by wiring the payments to the bank accounts for the Sham Companies.

**Sensa Technetics, LLC**

9

38.     Following its creation in October 2020 the mailing address for Sensa was 100 Park Avenue, Apt. 703, Fort Lee, NJ, defendant Hyo Sun Kim's previous residential address, whereas Sensa's purported head office address was listed as 6000 Poplar Avenue, Suite 250, Memphis, TN 38119.  Research concerning the Memphis address for Sensa shows that it's a virtual office in Memphis leased and operated by Regus.

39.     On or about October 27, 2020, Airtech needed to purchase I.C. processors for WIMAX.  Yim directed an employee in Airtech to place the order for the processors to Sensa.   Thereafter, Yim and Kim caused a pro forma invoice #10292020A to be sent via email to Airtech for the purchase in the amount of $1,450.  The invoice included Sensa's bank account information.

40.     On or about October 30, 2020, Airtech wired to Sensa an amount of $1,450 representing the purchase price on the invoice.

41.     Subsequently, it was discovered that the actual cost of the processors was $79.60.

42.     The processors were delivered to Airtech through UPS via interstate commerce.

43.     On or about December 7, 2020, Yim directed an employee in Airtech to place another purchase order for IC processors to Sensa.

44.     On or about December 8, 2020, Yim and Kim caused a pro forma invoice #12082020A to be sent via email to Airtech for the purchase in the amount of $65,322.

45.     On or about December 9, 2020, Airtech wired to Sensa an amount of $65,322 representing the purchase price on the invoice.

46.     Subsequently, it was discovered that the actual cost of the processors in this second transaction was $4,561.08.

47.     The processors were delivered to Airtech via UPS through interstate commerce.

10

**Genuine Aviation, LLC**

48.     After receiving the $65,322 wire from Airtech referred to above, defendants Yim and Kim were emboldened and determined to further carry out their scheme to defraud Airtech.  On December 14, 2020, Kim created Genuine yet another entity to aid in their scheme.  The purported address for Genuine was 4651 Salisbury Road, Suite 400, Jacksonville, Florida 32256.  Research concerning the address for Genuine shows that it is also another virtual office leased and operated by Regus.

49.     On or about January 8, 2021, Airtech needed to purchase a relay part.  Yim directed an employee in Airtech to place the order for the relay part to Genuine.  Thereafter, Yim and Kim caused a pro forma invoice #29446 to be sent via email to Airtech for the purchase in the amount of $73,184.  The invoice included Genuine's bank account information.

50.     On or about January 8, 2021, Airtech wired to Genuine an amount of $36,592 representing half of the purchase price on the invoice.  Then on January 13, 2021, Airtech wired via fed wire to Genuine the balance of the invoice in the amount of $36,592.

51.     Subsequently, it was discovered that the actual cost of the relays was $20,208.32.

52.     On or about January 13, 2021, the relays were delivered to Airtech via UPS through interstate commerce.

53.     On or about March 5, 2021, Airtech needed to purchase more relay parts.  Yim directed an employee in Airtech to place the order for the relay part to Genuine.  Thereafter, Yim and Kim caused a pro forma invoice #29512 to be sent via email to Airtech for the purchase in the amount of $70,897.

54.     On or about March 5, 2021, Airtech wired to Genuine an amount of $35,448.50 representing half of the purchase price on the invoice.  Then on March 9, 2021, Airtech wired to Genuine the balance of the invoice in the amount of $35,448.50.

55.     Subsequently, it was discovered that the actual cost of the relays was $19,576.81.

56.     On or about March 9, 2021, the relays were delivered to Airtech via UPS through interstate commerce.

**RFWAVE LAB INC.**

57.     On April 21, 2021, defendant Kim created yet another entity, defendant RFWave to aid in their scheme.  The purported business address for RFWave is 110 Front Street, Suite 300, Jupiter, Florida 33477.  Research concerning the address for RFWave revealed that it is also another virtual office leased and operated by Regus.  The address for the sole officer of RFWave is registered as 5 Kings Court, Fort Lee, NJ 07024, the home address for Yim and Kim.

58.     On or about May 6, 2021, Airtech needed to purchase an attenuator part.  Yim directed an employee in Airtech to place the order for the part to RFWave.  Thereafter, Yim and Kim caused a pro forma invoice #IN002775 to be sent via email to Airtech for the purchase in the amount of $27,375.  The invoice contained RFWave's account information.

59.     On or about May 7, 2021, Airtech wired to RFWave an amount of $27,375 representing the purchase price on the invoice.

60.     Subsequently, it was discovered that the actual cost of the attenuators was $10,105.43.

61.     On or about May 11, 2021, the attenuators were delivered to Airtech via UPS through interstate commerce.

**<u>ARC-TECH INC.</u>**

62.     On May 3, 2021, defendant Kim and Yim created defendant Arc-Tech as yet another entity to aid in their scheme.  The purported business address for Arc-Tech is 6303 Blue Lagoon Drive, Suite 400, Miami, FL 33126.  Research concerning the address for Arc-Tech revealed that it is also another virtual office leased and operated by Regus.

63.     On or about August 9, 2021, Airtech needed to purchase lamp flash lamps.  Yim created a purchase order from Airtech to purchase the lamps in the amount of $67,500 which was duly sent to Arc-Tech.

64.     On or about November 30, 2021, Airtech wired via fed wire to Arc-Tech an amount of $67,500 representing the purchase price on the lamp flash lamps.

65.     Subsequently, it was discovered that the actual cost of the lamps was $32,500.

66.     On or about December 6, 2021, the lamps were delivered to Airtech via UPS through interstate commerce.

67.     On or about August 23, 2021, Airtech needed to purchase more lamp flash lamps.  Yim created a purchase order from Airtech to purchase the lamps in the amount of $1,150 which was duly sent to Arc-Tech.

68.     On or about October 8, 2021, Airtech wired to Arc-Tech an amount of $1,150 representing the purchase of the lamps.

69.     Subsequently, it was discovered that the actual cost of the lamps was $260.

70.     On or about September 8, 2021, the lamps were delivered to Airtech via UPS through interstate commerce.

71.     The summary of the transactions from Defendants' perpetrated fraud are as follows:

| PO Date | Sham Company | Charge Paid by Airtech | What should have been paid |
|---|---|---|---|
| 10/27/20 | Sensa Technetics LLC | $1,450 | $79.60 |
| 12/7/20 | Sensa Technetics LLC | $65,322 | $4,561.08 |
| 1/8/21 | Genuine Aviation LLC | $73,184 | $20,208.32 |
| 3/5/21 | Genuine Aviation LLC | $70,897 | $19,576.81 |
| 5/6/21 | RFWave LAB INC | $27,375 | $10,105.43 |
| 8/9/21 | ARC-TECH INC | $67,500 | $32,500.00 |
| 8/23/21 | ARC-TECH INC | $1,150 | $260.00 |
| Total: | | $306,878 | $87,291.24 |

72.     Every transaction described above was made with Defendants' concerted effort and   intent to defraud Airtech.

73.     The discrepancy between what should have been paid by Airtech for the subject equipment and the amount of the invoices billed and paid to the Sham Companies is $219,586.76.

74.     The scheme perpetrated by defendants Yim and Kim through their Sham Companies was extensively planned, and it was orchestrated over a substantial period of time, spanning over a year, with various false and fraudulent documents used to steal from the Plaintiff.

75.     After the transactions were executed and paid for by Airtech, defendant Yim went further in his scheme by accessing account ledgers in Airtech's computer systems to change the names of the vendors.  He changed the names of the Sham Companies to the names of legitimate vendors that Airtech frequently dealt with in the ordinary course of business.   Yim did this to conceal the names of Sham Companies involved, making the

discovery of such transactions extremely difficult.  Yim changed the names as follows with the intent to further conceal his fraud:

| Date | Orig. Name | Changed Name | Amount |
|------|-----------|--------------|--------|
| 10/15/2020 | Sensa Technetics | Arrow Electric | $66,772 |
| 12/14/2020 | Genuine Aviation LLC | Arrow Electric | $144,081 |

**c.  Forged Commission Vouchers**

76.     On or about October 8, 2019, defendant Yim created a phony invoice in the amount of $11,250 from a broker company, EAU Group, for a consulting commission. He submitted the invoice to Plaintiff's accounting department and instead of directing the funds to EAU Group, Yim instructed that the funds should be wired to defendant Hyo Sun Kim.  On October 8, 2019, Airtech wired the funds to Kim as was instructed.

77.     On or about September 30, 2020, Yim created another phony invoice in the amount of $40,000 from EAU Group for a consulting commission.   He submitted the invoice to Plaintiff's accounting department, and as before, instead of directing the funds to EAU Group, Yim instructed the funds to be wired to defendant Kim.  On October 9, 2020, Airtech wired the funds to Kim as was instructed.

78.     In addition, in February and October of 2018, Yim on behalf of Airtech received a refund of a broker commission in the amounts of $5,625 and $5,625, respectively, totaling $11,250 from EAU Group.  To date, Yim has not remitted the said commission to Airtech.[5]

---

[5] Airtech's investigation of fraud and theft relating to forged commission vouchers is ongoing and additional such instances may be discovered.

d.  **Amazon Account**

79.     Similar to the fraudulent schemes set forth above, defendant Yim created yet another method to defraud Airtech by creating a seller identity account on amazon.com to transact business with Airtech.

80.     On January 14, 2021, while still working at Airtech, Yim began using his seller identity account on Amazon to sell HDLEXT-DVI to Airtech for $4,030.47.  Yim then delivered the goods via interstate commerce to Airtech on January 19, 2021.

81.     Again, on March 4, 2021, Yim used his seller identity account on Amazon to sell HDLEXT-DVI to Airtech and charged $7,135.38.  Yim then delivered the goods via interstate commerce to Airtech on March 12, 2021.

82.     Upon investigation, Airtech discovered that those parts that it paid $11,165.85 for had a market price of only $5,520, resulting in the misappropriation and unjust enrichment by Yim in the amount of $5,645.85.

83.     Airtech's investigation of fraud and theft relating to self-dealing and inflated invoices is ongoing and additional such instances may be discovered.

e.  **Theft of Hardware and Data**

84.     On or about October 21, 2021, while reviewing its surveillance camera videos, Airtech discovered that on June 25, 2021 and September 17, 2021, defendant Yim stole two computers from Airtech prior to his departure from Airtech.[6]  These computers contained highly sensitive and confidential information about Airtech's clients.

85.     On or about October 21, 2021, Airtech confronted Yim about the theft, and he agreed to return the stolen computers.  On or about December 9, 2021, Airtech obtained

---

[6] One computer was from defendant Yim's desk and the other computer was from Mr. Lee's work station.

the stolen computers and inspected them.  Upon doing so it learned that Yim had removed at least one of the hard drive memory systems from the computer, which contained most of the valuable data that Airtech was seeking.

86.     Airtech retained an expert to review the computer system artifacts, active and deleted files, internet history, file and folder access and other data sources of evidence of alteration of data on those computers after Yim had stolen them.  The expert concluded that the computer operating system had been reimaged on October 24, 2021, meaning he had copied all the data from the computers prior to returning them.  Additionally, the expert also concluded that since the Windows operating system was reinstalled on the computer on October 23, 2021 at roughly 10 PM UTC when it was in Yim's possession, any data showing the use of the computer before Yim's departure of Airtech was wiped out.

87.     Despite Airtech's continued demand to return the hard-drive, Yim has refused to return the hard drive and began using the data to directly compete against Airtech.

**f.  Stolen Business and Trade Secrets**

88.     As if the aforementioned scheme to defraud Airtech of hundreds of thousands of dollars was not enough, after defendant Yim left Airtech, Airtech discovered that the breadth of his fraudulent scheme was far greater than anything that it could have imagined.

        **Assured Components LLC**

89.     On February 5, 2020, two days after Yim got caught embezzling through the reimbursement voucher scheme and being stripped of his check-signing authority, Yim created defendant Assured, as hereinabove described.

90.     Defendant Kim, Yim's mistress, has served as the registered and authorized representative of Assured.  The registered office address of Assured is 18-20 Lackawanna Plaza, Suite 300, Montclair, NJ 07042.   Research concerning the registered address for Assured revealed that it is a virtual office leased and operated by Alliance Virtual Offices.

91.     On May 24, 2021, Assured even received a grant of $10,000 from the Small Business Emergency Assistance Grant Program.

92.     On or about February 6, 2020, Yim, on behalf of Assured, telephoned one of Airtech's customers, UnioneTech (SE-A Electronics) ("Unione"), and began soliciting business from Unione.

93.     Unione began placing purchase orders through Assured from February 2020 until September 30, 2021, when Yim departed from Airtech.  The accumulated diverted orders to Assured from UnioneTech (SE-A Electronics) were worth approximately $800,000.

**Hans Aerospace Inc.**

94.     Incredibly, just three days before his departure from Airtech, on September 27, 2021, defendant Yim formed Hans, yet another company, which he established to defraud Airtech.  Yim is the reported officer/director of the corporation with its registered address located at Yim's home address at 5 Kings Court, Fort Lee, NJ 07024.

95.     Defendant Hans is currently engaged in the same business as Airtech.   Yim has been soliciting business on behalf of Hans from Airtech's customers and reaching out to the customers of Airtech, utilizing the data which he improperly obtained from Airtech's computer systems.

96.     In November 2021, one of Airtech's vendors mistakenly sent an invoice to Airtech for an order placed by Yim. Airtech became suspicious and began to contact their customers. To Airtech's disbelief, Yim had contacted ALL of Airtech's customers and solicited their business.

97.     In or about August 2021, while still employed by Airtech, Yim learned that a customer was going to place an order of parts that were Proprietary Items to Airtech. Then in or about October 2021, while concealing the fact that the items were proprietary to Airtech, Yim contacted the vendor who makes the Proprietary Items and placed an order for the Proprietary Items in the amount of $134,841.

98.     Yim traveled to Korea and visited every single one of Airtech's customers.

99.     Yim had taken all of the information from Airtech's computers which contained all of its customer information as well as the specification of parts necessary for each customer.  He then contacted virtually all of Airtech's vendors that manufactures those parts and began placing orders.  Yim placed orders for those Proprietary Items that ONLY Airtech has been able to manufacture for the past 10 years.

100.    As a result, Airtech's damages are beyond insurmountable and staggering.

## **CONCLUSION**

101.    Through the countless deceptive, false, fraudulent self-dealing activities, and through the manufacture and use of sham documents, including the fake invoices, receipts, and emails described above, defendants Yim and Kim and the other Defendants committed various acts in violation of the law, as stated below.  Defendants conspired, participated and abetted with one another and otherwise derived ill-gotten gains from all the illegal activities herein alleged.

19

102.    Defendants' acts and omissions were willful, wanton, deliberate and malicious and significant punitive damages are warranted against them, jointly and severally.

## CLAIMS FOR RELIEF

### Count One- State Law Conversion

103.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

104.    By submitting fake and sham expense reimbursement vouchers, defendant Yim committed conversion of funds from Plaintiff in an amount to be determined at trial, but not less than $111,929.92.

105.    Despite the fact that Plaintiff requested return of said funds, defendant Yim has failed and refused to return the funds to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

   a.   declaring that defendant Yim intentionally converted property belonging to Plaintiff;

   b.   declaring that Yim's conversion was willful;

   c.   enjoining future acts of conversion by Yim;

   d.   awarding Plaintiff compensatory damages;

   e.   awarding Plaintiff liquidated damages;

   f.   awarding Plaintiff punitive damages;

   g.   awarding Plaintiff pre- and post-judgment interest;

   h.   awarding Plaintiff reasonable attorneys' fees and costs; and

   i.   awarding such other and further relief as the Court deems just and proper.

### Count Two- State Law Theft of Corporate Funds Against All Defendants

106.     Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

107.     By those acts and omissions, aided and abetted by the other Defendants as hereinabove set forth, defendant Yim intentionally misappropriated funds belonging to Plaintiff and caused Plaintiff to suffer an undue financial loss.  Plaintiff's loss consists of the sum of $111,929.92 from the fake expense vouchers; approximately $219,586.76 from the phony invoices created by defendant Yim on behalf of the Sham Companies; and $62,500 from the phony commission invoice submitted by Yim; and $5,645.85 from the sales created by Yim on Amazon.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

    a.   declaring that Defendants have stolen corporate funds from Plaintiff;

    b.   declaring that Defendants' actions were willful;

    c.   awarding Plaintiff compensatory damages;

    d.   awarding Plaintiff liquidated damages;

    e.   awarding Plaintiff punitive damages;

    f.   awarding Plaintiff pre- and post-judgment interest;

    g.   awarding Plaintiff reasonable attorneys' fees and costs; and

    h.     awarding such other and further relief as the Court deems just and proper.

### Count Three- State Law Breach of Fiduciary Duty Against Yim

108.   Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

21

109.   As the general manager of Airtech, defendant Yim owed a duty of fidelity and loyalty to Plaintiff.  Without question, Yim stood in a position of ultimate trust vis-à-vis Plaintiff in regard to his actions complained of herein.

110.   Defendant Yim knew that Plaintiff had granted him certain authority based on his position of trust and duty of loyalty.

111.   It was a violation of his fiduciary duty to scheme to provide fake and phony invoices to defraud Plaintiff.  Defendant Yim's acts and omissions constitute breach of his fiduciary duty.

112.   As a direct and proximate result of Yim's breach of fiduciary duty, Plaintiff has been injured in its business and property.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.   declaring that defendant Yim intentionally breached his fiduciary obligation to Plaintiff and his duty of loyalty to Plaintiff and that the other Defendants have directly aided and abetted in Yim's breach of his fiduciary duty to Plaintiff;

b.   declaring that Defendants' actions were willful;

c.   enjoining future acts of breach of fiduciary duty by Yim;

d.   awarding Plaintiff compensatory damages;

e.   awarding Plaintiff liquidated damages;

f.   awarding Plaintiff punitive damages;

g.   awarding Plaintiff pre- and post-judgment interest;

h.   awarding Plaintiff reasonable attorneys' fees and costs; and

i.   awarding such other and further relief as the Court deems just and proper.

## Count Four-Quantum Meruit, Unjust Enrichment and Constructive Trust
## Against All Defendants

113.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

114.    Defendants obtained property belonging to Plaintiff, and earned income, without paying proper compensation to Plaintiff.

115.    Defendants reaped profit from the wrongful disposition of Plaintiff's property which was not paid to or shared with Plaintiff.

116.    Plaintiff was damaged as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.   declaring that Defendants have received and profited from the resale of valuable goods from Plaintiff without paying appropriate compensation for them;

b.   declaring that Defendants' actions were willful;

c.   awarding Plaintiff compensatory damages;

d.   enjoining future such actions by Defendants;

e.   awarding Plaintiff punitive damages;

f.   awarding Plaintiff pre- and post-judgment interest;

g.   awarding Plaintiff reasonable attorneys' fees and costs; and

h.   awarding such other and further relief as the Court deems just and proper.

## Count Five- Fraud against All Defendants

117.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

118.    Defendants made material misrepresentations of fact regarding various commercial transactions in which they induced Plaintiff to engage in.

119.    Defendants intended Plaintiff to rely upon these misrepresentations, and Plaintiff did rely upon them.

120.    Plaintiff was damaged as a result of relying upon the misrepresentations, which were willful and malicious.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

      a.  Declaring that  Defendants  intentionally defrauded Plaintiff;

      b.  declaring that Defendants' fraud was willful;

      c.  enjoining future acts of fraud by Defendants;

      d.  awarding Plaintiff compensatory damages;

      e.  awarding Plaintiff liquidated damages;

      f.  awarding Plaintiff punitive damages;

      g.  awarding Plaintiff pre- and post-judgment interest;

      h.  awarding  Plaintiff  reasonable  attorneys'  fees  and  costs;  and

      i.  awarding  such  other  and  further  relief  as  the  Court  deems  just  and proper.

**Count Six-Tortious Interference with Contract against All Defendants**

121.     Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

122.    Defendants were not a party to Plaintiff's contracts with its customers.

123.    Defendant knew of Plaintiff's contractual relationship with its customers, but actively interfered with Plaintiff's contracts with its customers without

justification, inducing such customers to breach by diverting the transactions from Plaintiff to Defendants.

124.    From such diversion of business transactions, Plaintiff lost its contractual rights and benefits arising thereof.

125.    Plaintiff was damaged as a result of such breaches.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.  declaring that Defendants tortiously interfered with Plaintiff's contracts with its customers;

b.  declaring that Defendants' tortious interference was willful;

c.  enjoining future acts of tortious interference by Defendants;

d.  awarding Plaintiff compensatory damages;

e.  awarding Plaintiff liquidated damages;

f.  awarding Plaintiff punitive damages;

g.  awarding Plaintiff pre- and post-judgment interest;

h.  awarding Plaintiff reasonable attorneys' fees and costs; and

i.  awarding such other and further relief as the Court deems just and proper.

## Count Seven-Conspiracy against All Defendants

126.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

127.    Defendants agreed between themselves to take actions in furtherance of fraud, conversion, tortious interference with contract and other wrongdoing against Plaintiff.

128.    Defendants took specific actions, to wit, fraud, conversion and tortious interference

with contract in furtherance of their agreement inflicting a wrong against Plaintiff.

129.   Plaintiff was damaged as a result of this conspiracy between the Defendants.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

    a.   declaring that Defendants conspired to commit torts and other wrongdoing against Plaintiff;

    b.   declaring that Defendants' conspiracy was willful;

    c.   enjoining future acts of conspiracy by Defendants;

    d.   awarding Plaintiff compensatory damages;

    e.   awarding Plaintiff liquidated damages;

    f.   awarding Plaintiff punitive damages;

    g.   awarding Plaintiff pre- and post-judgment interest;

    h.   awarding Plaintiff reasonable attorneys' fees and costs; and

    i.   awarding such other and further relief as the Court deems just and proper.

### Count Eight-Violation of Computer Fraud & Abuse Act
### 18 U.S.C. §1030, Against All Defendants

130.   Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

131.   Defendants intentionally exploited and misappropriated one or more computers belonging to Plaintiff.

132.   Defendants lacked authority to access the computer or exceeded granted authority to access the computers.

133.   Defendants obtained data from the computer they misappropriated.

134.   Defendants caused a loss of $5,000 or more during a one-year span misusing the data from Plaintiff's computer(s) which they obtained.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

26

a.  declaring that Defendants violated 18 U.S.C. §1030;

b.  awarding Plaintiff compensatory damages;

c.  awarding Plaintiff liquidated and/or statutory damages;

d.  awarding Plaintiff punitive damages;

e.  awarding Plaintiff pre- and post-judgment interest;

f.  awarding Plaintiff reasonable attorneys' fees and costs; and

g.  awarding such other and further relief as the Court deems just and proper.

**Count Nine-Accounting Against All Defendants**

135.   Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

136.   Defendants have sole and exclusive control over business records relating to the marketing and sale of the goods and other property at issue herein.

137.   Plaintiff cannot determine the full extent of its damages without access to the books and records of the Defendants.

138.   Therefore, Plaintiff seeks a court-ordered accounting of such books and records as they pertain to the marketing and sales of the goods and other property at issue herein.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.  declaring that Defendants have sole and exclusive control over important records relating to Plaintiff's business operations;

b.  directing the appointment of an auditor who shall provide an accounting of such records to Plaintiff;

c.  awarding Plaintiff reasonable attorneys' fees and costs; and

27

d.   awarding such other and further relief as the Court deems just and proper.

## **Count Ten- Substantive RICO Violations**

139.   Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

140.   Defendants, under the leadership of defendant Yim, have committed violations of the Federal RICO Act by being employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

141.   Defendants agreed to and did conduct and participate in the conduct of such enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff Airtech.

142.   Defendants formed various corporate entities and limited liability companies in multiple states to defraud Airtech. Specifically, defendants Yim and Kim formed SENSA TECHNETICS LLC, GENUINE AVIATION LLC, RFWAVE LAB INC., and ARC-TECH INC. with the sole intent to defraud Airtech; to submit fake invoices at grossly inflated prices to misappropriate and steal monies from Airtech.

143.   Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of mail and wire fraud.

144.   The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961 (5).

**Racketeering Enterprise**

145.    Defendants and certain other persons and entities involved in the events, including defendants Yim, Kim, Sensa, Genuine, RFWave and Arc-Tech, under the leadership of defendant Yim, formed an association-in-fact constituting an "enterprise" as defined by 18 U.S.C. §1961(4), composed of a group of individuals, corporate entities, and limited liability companies.  The Enterprise was engaged in, and its activities affected, interstate and international commerce, including various acts of mail fraud and wire fraud violations.

146.    In addition to the Enterprise discussed above, defendants Yim and Kim have an interest in another "Enterprise" consisting of the airplane parts business called Assured Components LLC and Hans Aerospace Inc.

147.    The foregoing associations-of-fact will be collectively referred as "Enterprise".

**Purpose of the Enterprise**

148.    The purpose of the Enterprise included the following:

A. Obtaining approximately $200,000 or more through the commission of unlawful activities, including among other things, mail fraud, wire fraud, and embezzlement in connection with Plaintiff's business or property; and

B. Preserving and protecting the power and viability of the Enterprise through fraudulent actions; and acquiring wealth and benefits that would otherwise not be available to Defendants.

**Means and Methods of the Enterprise**

149.    The members and associates of the Enterprise conducted and participated in their affairs in furtherance of their criminal enterprises by means of the following, and others:

A. They committed two or more predicate acts of mail fraud by sending multiple phony invoices to Plaintiff.

B. They committed two or more predicate acts of wire fraud by transmitting materially false information to Plaintiff regarding the products, prices, and the true identity of the entities soliciting business to Plaintiff.

C. They committed one or more acts of embezzlement of funds belonging to Plaintiff, intended for operational uses of Plaintiff's business, by taking without permission, in the sum of approximately $219,586.76.

D. They committed other acts which were fraudulent or otherwise in violation of the law.

**Racketeering Violation**

150.    From approximately 2019, for more than two years, with plans to continue well into the future, in this District and in other districts, the named Defendants, together with others known and unknown, being persons employed by and associated with the Enterprise described above, which was an enterprise engaged in, and the activities of which affected interstate and foreign commerce, unlawfully, willfully, and knowingly conducted and participated, directly or indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity, through the commission of various racketeering acts, as stated in this complaint.

**Pattern of Racketeering Activity**

151.     The pattern of racketeering activity, as defined in 18 U.S.C. §1961(1) and

§1961(5), consisted of the following racketeering acts, among numerous others,

committed before and after the following acts:

<u>Racketeering Act One-mail fraud</u>

152.     On October 7, 2019, defendants Yim and Kim sent documents in the interstate

commerce and through the instrumentalities of the United States postal system, showing

a false and fraudulent scheme to obtain approximately $11,250 claiming that it was a

commission owed by Plaintiff.

<u>Racketeering Act Two-mail fraud</u>

153.     On September 30, 2020, defendants Yim and Kim sent documents in the interstate

commerce and through the instrumentalities of the United States postal system, showing

a false and fraudulent scheme to obtain approximately $40,000 claiming that it was a

commission owed by Plaintiff.

<u>Racketeering Act Three-mail fraud</u>

154.     On October 27, 2020, defendants Yim and Kim through defendant Sensa, sent

documents through email and through interstate commerce showing a false and

fraudulent scheme to obtain approximately $1,450 on parts worth $79.60 claiming that it

was a sales invoice to Plaintiff.

<u>Racketeering Act Four-mail fraud</u>

155.     On December 7, 2020, defendants Yim and Kim through defendant Sensa, sent

documents through email and through interstate commerce showing a false and

fraudulent scheme to obtain approximately $65,322 on parts worth $4,561.80 claiming

that it was a sales invoice to Plaintiff.

31

Racketeering Act Five-mail fraud

156.    On January 8, 2021, defendants Yim and Kim through defendant Genuine sent documents through email and through interstate commerce showing a false and fraudulent scheme to obtain approximately $73,184 on parts worth $20,208.32 claiming that it was a sales invoice to Plaintiff.

Racketeering Act Six-mail fraud

157.    On March 5, 2021, defendants Yim and Kim through defendant Genuine sent documents through email and through interstate commerce showing a false and fraudulent scheme to obtain approximately $70,897 on parts worth $19,576.81 claiming that it was a sales invoice to Plaintiff.

Racketeering Act Seven-mail fraud

158.    On May 6, 2021, defendants Yim and Kim through defendant RFWave, sent documents through email and through interstate commerce showing a false and fraudulent scheme to obtain approximately $27,375 on parts worth $10,105.43 claiming that it was a sales invoice to Plaintiff.

Racketeering Act Eight-mail fraud

159.    On August 9, 2021, defendants Yim and Kim through defendant Arc-Tech, sent documents through email and through interstate commerce showing a false and fraudulent scheme to obtain approximately $67,500 on parts worth $32,500 claiming that it was a sales invoice to Plaintiff.

Racketeering Act Nine-mail fraud

160.    On August 23, 2021, defendants Yim and Kim through defendant Arc-Tech, sent documents through email and through interstate commerce showing a false and

fraudulent scheme to obtain approximately $1,150 on parts worth $260 claiming that it was a sales invoice to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.   awarding Plaintiff compensatory damages;

b.   awarding Plaintiff liquidated damages;

c.   awarding Plaintiff punitive damages;

d.   disgorgement of all financial gains Defendants derived from their acts and omissions against Plaintiff;

e.   awarding Plaintiff pre- and post-judgment interest;

f.   awarding Plaintiff treble damages;

g.   awarding Plaintiff reasonable attorneys' fees and costs; and

h.   awarding such other and further relief as the Court deems just and proper.

<u>**Count Eleven- Substantive RICO Violations**</u>

161.  Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

162.   By reason of the foregoing facts, Defendants violated various parts of the Federal RICO Act, including the substantive provisions of 18 U.S.C.§1962.

163.   Defendants have violated subsection (a) by receiving income derived from a pattern of racketeering activity and has used such income to acquire an interest, or the establishment or operation of any enterprise which is engaged in interstate or international commerce.

164.   Defendants have also violated subsection (b) as they have, through the commission of a pattern of racketeering activity acquired or maintained, directly or

indirectly, any interest in or control over any enterprise which is engaged in interstate or foreign commerce.

165.    Defendants have additionally violated subsection (c) as they have been employed by such enterprise engaged in interstate or foreign commerce which directly or indirectly participated in the affairs of the enterprise through the commission of a pattern of racketeering activity.

166.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. §1962, Plaintiff has been injured in its business and property.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.      awarding Plaintiff compensatory damages;

b.      awarding Plaintiff liquidated damages;

c.      awarding Plaintiff punitive damages;

d.      disgorgement of all financial gains Defendants derived from their acts and omissions against Plaintiff;

e.      awarding Plaintiff pre- and post-judgment interest;

f.      awarding Plaintiff treble damages;

g.      awarding Plaintiff reasonable attorneys' fees and costs; and

h.      awarding such other and further relief as the Court deems just and proper.

### Count Twelve- Conspiracy to Commit RICO Violations

167.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

168.    By agreeing to commit violations of subsections (a), (b), and (c), Defendants conspired to violate the conspiracy provision of 18 U.S.C.§1962(d).

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.  awarding Plaintiff compensatory damages;

b.  awarding Plaintiff liquidated damages;

c.  awarding Plaintiff punitive damages;

d.  disgorgement of all financial gains Defendants derived from their acts and omissions against Plaintiff;

e.  awarding Plaintiff pre- and post-judgment interest;

f.  awarding Plaintiff treble damages;

g.  awarding Plaintiff reasonable attorneys' fees and costs; and

h.  awarding such other and further relief as the Court deems just and proper.

## Count Thirteen- Permanent Injunction

169.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

170.    As described above, Defendants have misappropriated the trade secrets of Plaintiff, including but not limited to client lists, parts specifications and product designs.

171.    Thereafter, Defendants have used the misappropriated trade secrets of Plaintiff to compete with Plaintiff in its specialized and limited market, causing significant irreparable damage to Plaintiff's relationship with its customers.

172.    Plaintiff will continue to suffer irreparable harm to its customer base if Defendants continue to utilize misappropriated trade secrets in this manner.

173.    Remedies available at law, such as monetary damages, are inadequate to compensate for the injury so sustained by Plaintiff.

174.    A remedy in equity is warranted upon consideration of the balance of hardships between the Plaintiff and Defendant.

175.    The permanent injunction being sought would not hurt public interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

a.    Permanently enjoining Defendants from engaging in business with the customers of Plaintiff;

b.    awarding Plaintiff reasonable attorneys' fees and costs; and

c.    awarding such other and further relief as the Court deems just and proper.

### Count Fourteen- Breach of Contract Against Yim

176.    Plaintiff repeats and re-alleges paragraphs 1 through 102 as if fully set forth herein.

177.    Defendant Yim entered into a contract with Plaintiff for employment.

178.    As the general manager of Airtech, defendant Yim stood in a position of ultimate trust vis-à-vis Plaintiff in regard to his actions complained of herein.

179.    Defendant Yim knew that Plaintiff had granted him certain authority based on his position.

180.    It was a breach of the contract between the parties to scheme to provide fake and phony invoices to defraud Plaintiff, and to steal corporate funds and property. Defendant Yim's acts and omissions constitute breach of contract.

181.    As a direct and proximate result of Yim's breach of fiduciary duty, Plaintiff has been injured in its business and property.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

    i.   declaring that Defendant Yim has breached the contract with Plaintiff;

    j.   declaring that Defendant's actions were willful;

    k.  awarding Plaintiff compensatory damages;

    l.   enjoining future such actions by Defendants;

    m.  awarding Plaintiff punitive damages;

    n.  awarding Plaintiff pre- and post-judgment interest;

    o.  awarding Plaintiff reasonable attorneys' fees and costs; and

    p.  awarding such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: February 8, 2022

                        Respectfully,

                    By: */s/ Christine M. Bae*
                         Christine M. Bae

## VERIFICATION

Jin O. Lee, of full age, hereby certifies:

I am the president of AIRTECH INTERNATIONAL INC., Plaintiff in the above-entitled matter.  I have held this position since 2002 when I founded Airtech.  My responsibilities include monitoring the contractual agreements and financial records of AIRTECH INTERNATIONAL INC. I have read the foregoing Complaint and certify that the allegations contained therein are true to the best of my knowledge, information and belief.

I certify that the foregoing statements are true. I am aware that if any statement made herein is willfully false, I am subject to punishment.

_____
JIN O. LEE

Dated:  February _08_ , 2022