UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIRTECH INTERNATIONAL INC., : | |
| : | **Civil Action No. 22-00668-MEF-AME** |
| Plaintiff, : | |
| : | **OPINION and ORDER** |
| v. : | |
| : | |
| BYUNG CHAN YIM, et al., : | |
| : | |
| Defendants. : | |
| : | |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the motion by Plaintiff Airtech International, Inc. ("Plaintiff") for leave to amend, supplement, and add parties to its Complaint pursuant to Federal Rule of Civil Procedure 15(a) and (d) and Federal Rule of Civil Procedure 20. [D.E. 271 and 276]. Defendants Byung Chan Yim; Hyo Sun Kim; Assured Components, LLC; Sensa Technetics, LLC; Genuine Aviation, LLC; RFWave Lab, Inc.; Arc-Tech, Inc.; and Hans Aerospace, Inc. ("Defendants") oppose the motion. [D.E. 274]. The Court has considered the parties' written submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's motion is granted in part and denied in part. Specifically, Plaintiff's request to add parties and certain factual allegations pertaining to those parties is granted. The remainder of Plaintiff's requests, to add a claim under the Defend Trade Secrets Act, to amend its tortious interference claim, to remove the claims for permanent injunction, accounting, and quantum meruit, and to provide additional and supplement factual allegations, are denied.

**I.    BACKGROUND**

Plaintiff filed this action on February 8, 2022, naming as Defendants Byung Chan Yim; Hyo Sun Kim; Assured Components, LLC; Sensa Technetics, LLC; Genuine Aviation, LLC;

RFWave Lab, Inc.; Arc-Tech, Inc.; and Hans Aerospace, Inc. [*See* D.E. 1]. On March 1, 2022, Plaintiff filed an emergency motion for a temporary restraining order and a preliminary injunction against all Defendants, which requested the Court enjoin Defendants from dealing with certain of Plaintiff's customers and prohibit Defendant Byung Chan Yim ("Yim") from dispersing the funds Plaintiff alleges Yim gained from impermissible appropriation of Plaintiff's proprietary information. [*See* D.E. 4-1 at 5]. On March 15, 2022, the District Court issued a temporary restraining order that enjoined Defendants from communicating or transacting with certain of Plaintiff's customers and enjoined Defendants from withdrawing, transferring, or otherwise alienating funds from four specified bank accounts. [D.E. 13]. On March 22, 2022, the District Court dissolved the portion of the temporary restraining order that enjoined Defendants from using funds from the four bank accounts. [D.E. 27]. On March 28, 2022, the District Court issued a letter order that imposed the operative temporary restraints in this matter (the "March 28 TRO"). [D.E. 37].

Defendants moved to modify the temporary restraints on May 26, 2022. [D.E. 63]. On June 16, 2022, the District Court denied that motion. [D.E. 76]. Thereafter, Plaintiff filed an Amended Complaint on June 17, 2022, and then filed a Second Amended Complaint against these same Defendants on July 19, 2022 (the "SAC"),[1] asserting claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq*. (the

---

[1] While Plaintiff refers to the July 19, 2022 complaint as the "Verified Amended and Supplemental Complaint for Injunctive Relief and Damages," [*see* D.E. 271-1 at 4], and refers to the proposed amended and supplemental complaint at issue in this instant motion as the "Verified Second Amended and Supplemental Complaint," [*see* D.E. 271-1 at 6], the record reflects that the July 19 complaint is technically the second amended complaint filed in this action. This Opinion refers to the July 19 complaint as the "Second Amended Complaint" or the "SAC" and refers to the proposed amended and supplemental complaint as the "Third Amended Complaint" or the "TAC."

2

"NJTSA"), as well as claims for permanent injunction, common law conversion, theft of corporate funds, breach of fiduciary duty, quantum meruit, unjust enrichment and constructive trust, fraud, tortious interference with contract, conspiracy, accounting, breach of contract, and defamation. [D.E. 97 at 25-49]. On July 21, 2022, the District Court struck the July 19 SAC from the record, but reinstated it on July 27, 2022, and it functions as the operative complaint in this action. [*See* D.E. 101 and 104].

This Court held an initial scheduling conference on September 6, 2022, and thereafter issued a pre-trial scheduling order on September 7, 2022, which set a December 2, 2022 deadline for any motion to amend the pleadings. [*See* D.E. 108]. In the time between the issuance of the September 7, 2022 scheduling order and this motion, the discovery schedule has been modified a dozen times, [*see*, *e.g.*, D.E. 130, 154, 166, 186, 189, 227, 238, 244, 251, 265, 267, and 269], but the December 1, 2022 deadline passed without any requests to amend the pleadings or to modify that deadline.

On May 4, 2023, Defendants filed a motion to dissolve the March 28 TRO. [D.E. 132]. The District Court held a series of hearings to consider argument on that motion and ultimately denied it. [*See* D.E. 209, 210, 212, and 213]. At one of those hearings, on January 29, 2024, Yim alluded to a Gmail account that, upon closer investigation, appeared to contain information responsive to Defendants' previous discovery requests. [*See* D.E. 271-3 at 194; D.E. 235 at 16]. Plaintiff has since discovered several other Gmail accounts belonging to Yim with responsive information. [D.E. 271-1 at 10]. Rolling production of responsive, non-privileged documents and communications within these Gmail accounts (the "Gmail Accounts") began around March 2024, and continued through the rest of that year. [*See* D.E. 271-1 at 5, 10-12]. It appears from

3

the record that after the rolling Gmail production began, Plaintiff gained a better understanding of two entities, "Hans Aerospace LLC" ("Hans LLC") and "Bizarra Ventura, Inc." ("Bizarra"), and their alleged connection to Plaintiff's claims in the SAC. [*See* D.E. 271-1 at 13-14]. Specifically, Plaintiff contends Yim formed these entities after entry of the March 28 TRO to continue to circumvent its restrictions. [*Id.*].

On November 21, 2024, Plaintiff moved to file a Third Amended Complaint (the "TAC"). [D.E. 271]. The proposed TAC is ninety-nine pages long—that is, it seeks to add a total of forty-eight pages to the fifty-one-page SAC. [*Compare* D.E. 271-3 at 188 *with* D.E. 97 at 51]. Specifically, it seeks (1) to add as Defendants Hans LLC and Bizarra (together, the "Proposed Defendants"); (2) to add a cause of action under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* (the "DTSA"); to modify the NJTSA claim; and to modify the claim for tortious interference with contract to add allegations of tortious interference with contractual relations, prospective economic advantage, and unfair competition; (3) to add supplemental facts based on information and documents produced in discovery after the SAC was filed in July 2022 as well as to add facts known before the filing of the SAC to "clarify" the already existing claims; and (4) to remove the claim for quantum meruit and to remove the counts in the SAC that request a permanent injunction and accounting. [*See* D.E. 271-1 at 4].

Defendants oppose the motion, arguing that the proposed amendments are unjustifiably delayed and would be prejudicial to them. [*See* D.E. 274 at 13-14]. Defendants also assert that the proposed DTSA and related amendments would be futile, because they fail to plausibly plead that Plaintiff has a protectable proprietary interest in their products, price, or customers under the DTSA to the degree of legal sufficiency required by Rule 15's futility standard. [*Id.* at 12-13].

Finally, Defendants oppose Plaintiff's request to join Hans LLC and Bizarra as parties under Rule 20, arguing Plaintiff seeks to "improperly bar" Defendants—specifically Yim—from operating in "the Korean aerospace defense industry." [*Id.* at 14]. Defendants argue this would far exceed the scope of the TRO and would improperly "further [Plaintiff's] market-manipulating tactics." [*Id.* at 14-15].

**II. DISCUSSION**

    **a. Rule 16(b)(4) Good Cause Standard**

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. However, because Plaintiff's motion was filed on November 21, 2024, nearly two years after the December 1, 2022 deadline for motions to amend pleadings or add parties, the Court must first determine whether there is good cause under Rule 16(b)(4) to consider this late request before proceeding to a Rule 15 analysis.

Under Rule 16(b)(4), a schedule set by a court's case management order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The purpose of Rule 16 is to provide for the judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases." *Prince v. Aiellos*, No. 09-5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (citing *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir.1990)). "[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also Duran v. Merline*, 923 F. Supp. 2d 702, 732 (D.N.J.

2013) (holding "where the Court-ordered deadline for filing an amended pleading has passed, the party seeking to amend the pleading must first show 'good cause' to justify a modification of the scheduling order under Rule 16(b)(4)"). The party seeking amendment "must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols., LLC*, 970 F.3d at 319.

The burden is on the moving party to demonstrate good cause exists for a motion to amend out-of-time. *Duran*, 923 F. Supp. 3d at 732. Whether there is good cause primarily focuses on whether the moving party has acted with diligence. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Courts in this district have explained that "[g]ood cause requires a showing that, despite the movant's attentiveness, 'the deadlines set forth in the scheduling order could not reasonably be met.'" *See Blue Gentian, LLC v. Tristar Prods., Inc.*, No. 13-1758, 2024 WL 4719560, at *5 (D.N.J. Nov. 8, 2024) (quoting *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014)). "Good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Blue Gentian*, 2024 WL 4719560, at *5 (quoting *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012)). In sum, courts typically evaluate "whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the amended motion before the deadline had expired." *Fermin*, 2012 WL 1393074, at *3. The inherently factual nature of the good cause inquiry means it "necessarily varies with the

circumstances of each case." *Physicians Healthsource, Inc. v. Advanced Data Sys. Int'l, LLC*, No. 16-3620, 2019 WL 11270470, at *2 (D.N.J. June 12, 2019) (quotation omitted).

Although in its Rule 15 argument, Plaintiff argues that there is good cause to reset the deadline to amend pleadings, neither party addressed whether Plaintiff met the standard under Rule 16. Courts in this District and in the Third Circuit have explained that "[t]his deficiency alone warrants denial of [the] motion." *See*, *e.g.*, *Blue Gentian*, 2024 WL 4719560, at *5 (citing to *Premier Comp Sols. LLC v. UPMC Health Network, Inc.*, No. 15-703, 2017 WL 11680911, at *2 (W.D. Pa. Sept. 26, 2017), *aff'd*, 970 F.3d 316, 319 (3d Cir. 2020)). Still, "the fact that neither party specifically names Rule 16 or its required good-cause showing does not preclude the Court from applying that standard to [a] plaintiff's motion to amend." *Lloyd-Jones v. Connolly*, No. 20-912, 2022 WL 3572837, at *2 (D.N.J. Aug. 19, 2022) (internal quotations omitted).

### b. Amending and Supplementing the Complaint Under Rule 15

If the moving party satisfies the Rule 16 good cause standard, courts then consider whether the motion to amend is warranted under Rule 15. If a party does not amend its pleading as a matter of course under Federal Rule of Civil Procedure 15(a)(1), then it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Generally, under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(d), which governs the supplementation of pleadings, states that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

Concerning the difference between amending the complaint and supplementing the complaint, the Third Circuit has explained that Rule 15(a) allows for amendment to pleadings "to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1473 (3d ed. 2019)). While a Rule 15(a) amendment allows a party to "set forth additional events that occurred before the original complaint was filed," a motion to supplement the complaint under Rule 15(d), in contrast, "presents more recent events," those that occurred after the complaint was filed. *Garrett*, 938 F.3d at 82.

Under either subsection of Rule 15, the Court retains discretion to deny leave for various equitable reasons, including futility of the amendment, a party's undue delay in seeking leave to amend, prejudice to the non-moving party, and bad faith. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360-61 (D.N.J. 2000).

### i. Undue delay

Courts in this District have explained that, while the "undue delay" analysis under Rule 15 overlaps with Rule 16's "good cause" analysis, the standards are distinct. *See Blue Gentian, LLC*, 2024 WL 4719560, at *7. The Third Circuit has explained that "[d]elay alone is an insufficient ground to deny leave to amend." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). However, "[d]elay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d

263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273). "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985)).

### ii. Undue prejudice

In considering a motion for leave to supplement or amend, the Court is guided by the Third Circuit's consistent recognition "that prejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" *Arthur*, 434 F.3d at 204 (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Undue prejudice focuses on the hardship of the proposed amendment on the opposing party. *Adams*, 739 F.2d at 868. An amendment may be unduly prejudicial if it "would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273; *see also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (holding a court may find prejudice warrants denying a Rule 15 motion if the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.").

### c. Adding Parties Under Rule 20

Parties can rely on Federal Rule of Civil Procedure 20 to join additional parties after the deadline for such amendments has passed. *See Blue Gentian*, 2024 WL 4719560, at *9. Rule 20 governs permissive joinder of parties and provides that a defendant may be joined if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and if

(2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court." *Pepitone v. Target Corp.*, No. 24-236, 2024 WL 3823002, at *3 (D.N.J. Aug. 14, 2024).

Still, "a court is obligated to consider 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Cooley v. Lisman*, No. 16-4499, 2019 WL 11288454, at *5 (D.N.J. Feb. 28, 2019) (quoting *McKoy v. Carter*, Civ. No. 09-4170, 2010 WL 11470887, at *3 (D.N.J. April 16, 2010)). Specifically, in addition to the two factors provided in Rule 20, these other factors include "the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking the amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." *Cooley*, 2019 WL 11288454, at *5. The goal of Rule 20 is to "promot[e] judicial economy and efficiency." *Snodgrass v. Ford Motor Co.*, No. 96-485688, 2002 WL 485688, at *2 (D.N.J. Mar. 28, 2002).

### 1. Plaintiff's Request to Add as Defendants Hans LLC and Bizarra and to Add Supplemental Facts Pertaining to these Proposed Defendants

First, the Court finds that permissive joinder of Proposed Defendants Hans LLC and Bizarra is appropriate. The Court has discretion to deny joinder for undue delay and unfair prejudice. *Blue Gentian, LLC*, 2024 WL 4719560, at *10 (citing *Cooley*, 2019 WL 11288454, at *5). However, the Court concludes that, under Rule 16, any delay in Plaintiff's request to join these Proposed Defendants is not undue, because Plaintiff has presented circumstances that

10

understandably account for its inability to request joinder of these parties before the deadline to add parties. That is, it was not until relatively recently that Plaintiff could have possessed, or "through the exercise of reasonable diligence should have possessed," the knowledge necessary to seek to add the Proposed Defendants. *See Fermin*, 2012 WL 1393074, at *3.[2] Although the months that passed between Plaintiff's understanding of these entities and its November 21, 2024 motion to join them as parties may strain the boundaries of timeliness, that passage of time does not cross the threshold into undue delay. Furthermore, because discovery pertaining to these Proposed Defendants has already been underway since Plaintiff learned of their existence, the Court finds no undue prejudice in joining them, especially since the Court will limit inclusion of the proposed supplemental facts pertaining to these Proposed Defendants as below specified. Accordingly, good cause exists under Rule 16 to add Hans LLC and Bizarra as Defendants.

The Court also finds that Plaintiff has met the requisite standard for permissive joinder under Rule 20. The proposed TAC alleges that Yim organized the Proposed Defendants to circumvent the March 28 TRO. [*See* D.E. 271-1 at 13; 271-3 at 134]. The Court concludes that the allegations concerning these parties fairly comprise instances in the series of transactions that

---

[2] Plaintiff alleges Yim formed and utilized these entities to evade the restrictions that the March 28 TRO imposed on Defendants. Specifically, Plaintiff alleges Yim used Hans Aerospace LLC to improperly conduct business with Plaintiff's customers using Plaintiff's "trade secrets" after he "moved to Nevada," which appears to have been sometime in 2022. [D.E. 271-1 at 13; *see also* D.E. 271-3]. Concerning Bizarra Ventura, Inc., Plaintiff alleges and provides a certification from one of its vendors, who stated that around December 20, 2023, she received communication from Yim, who explained he would assume the name "Luis" and requested the vendor revise the name and company on a pending order to "Luis Silva" at Bizarra Ventura, Inc. [*See* D.E. 271-1 at 13-14; D.E. 271-5]. The Court reserves comment on the propriety of Defendants' apparent efforts to avoid their discovery obligations and, more troublingly, the restrictions specified in the District Court's March 28, 2022 TRO.

The parties' motion papers do not specify when, exactly, Plaintiff learned about these two entities. However, the record reflects that Plaintiff did not gain a clear understanding of the Proposed Defendants' alleged connection to the claims it asserts against them until after rolling production of Yim's Gmail accounts commenced. [See D.E. 271-1 at 13-14]. Plaintiff provided in a May 31, 2024 joint discovery dispute letter that the Gmail production "provides additional grounds for discovery," including further depositions, and that depositions sought include those of "Susan Parker of Hans Aerospace" and "Luis Silva of Bizarra Ventura." [*See* D.E. 247 at 15].

11

form the center of Plaintiff's claims such that Plaintiff may assert relief against the Proposed Defendants jointly, severally, or in the alternative. To be sure, this action will include at least one question of law or fact common to all, as the TAC proposes including the Proposed Defendants in some of the claims that already exist in the SAC. [*See*, *e.g.*, D.E. 271-3 at 143, ¶ 219].

Defendants oppose Plaintiff's request to join Hans LLC and Bizarra as parties, because doing so would "improperly bar" them and Yim from activity in the "Korean aerospace defense industry," and "exceeds the scope of the TRO." [*See* D.E. 274 at 14]. However, even if this were Plaintiff's aim, any motive that a moving party may have in seeking to add a party is only one factor a Court may take into consideration when evaluating permissive joinder. *See, e.g., Cooley*, 2019 WL 11288454, at *5. Here, evaluating the various factors Courts may consider in determining whether permissive joinder will comport with the principles of fundamental fairness, the Court has already concluded that any delay in Plaintiff's request to join the Proposed Defendants is not undue and that any possible prejudice that may result will be minimal. Additionally, the closeness of the relationship between the new and the old parties weighs in favor of joining the Proposed Defendants, as the proposed allegations provide that Yim himself organized these entities to, as Plaintiff alleges, continue to improperly use proprietary information to divert business from Plaintiff. For the same reason, Defendants should have been on notice about the possibility of Plaintiff seeking to add Hans LLC and Bizarra once discovery related to these entities was produced.

The Court also concludes that Plaintiff has satisfied Rule 15 to supplement the complaint, but only to add the allegations specified below pertaining to the formation of the Proposed Defendants and the alleged ways in which Yim has utilized these entities to appropriate

Plaintiff's proprietary information. Specifically, Plaintiff may supplement the complaint by adding their names to the list of Defendants as proposed at D.E. 271-3 at 91, and by adding the proposed facts pertaining to Hans LLC and Bizarra in the "Parties" section of the proposed amended complaint, D.E. 271-3 at 99, ¶¶ 29-30. Plaintiff may also supplement the complaint by adding the proposed facts pled in Section III of the "Facts Common to All Causes of Action" that pertain to Yim's alleged formation of Bizarra, D.E. 271-3 at 134, ¶¶ 180-182. Finally, Plaintiff may supplement the complaint by adding the proposed factual allegations concerning the Proposed Defendants under its "RICO Conspiracy" claim, D.E. 271-3 at 143, ¶ 219.

For the same reasons the Court finds good cause under Rule 16, the Court also concludes that Plaintiff's request to supplement the complaint to add these allegations is not unduly delayed. Allowing Plaintiff to supplement the complaint for the narrow purpose of adding these specific facts and allegations only will not unduly prejudice Defendants. The close of fact discovery remains months away, and expert discovery will not close for a few months after that, especially in light of the recent substitution of defense counsel. Any additional resources Defendants may expend to produce discovery narrowly pertaining to these additional parties should be minimal and will not significantly delay resolution of this dispute.

**2. Plaintiff's Requests to Add a Claim Under the DTSA, to Modify the NJTSA Claim, and to Amend the Tortious Interference Claim**

Next, the Court considers Plaintiff's request to add a cause of action under the DTSA, to modify the NJTSA claim, and to amend the claim for tortious interference with contract to add allegations of tortious interference with contractual relations, prospective economic advantage, and unfair competition. Plaintiff argues that any delay in these requests is due to Defendants' failure to comply with their discovery obligations in good faith. Specifically, Plaintiff asserts that

good cause exists, because "the impetus for the motion was the Gmail production that began only in March of [2024]." [D.E. 271-1 at 17-18].

However, after careful review of the SAC and the TAC, the Court finds the contrary to be true. Indeed, none of the paragraphs supporting Plaintiff's proposed DTSA claim and modifications to the NJTSA claim assert facts dependent on discovery of the information contained in the Gmail Accounts. Rather, the new allegations concerning those claims could have been pled much earlier, as Plaintiff has always known about the nature of its business and also claimed alleged misappropriation of its trade secrets in the July 19, 2022 SAC. [*See* D.E. 271-3 at 136-140; D.E. 97 at 34-35].[3] The same reasoning applies to Plaintiff's proposed modifications to the tortious interference claim. [*See* D.E. 271-3 at 175-179]. Plaintiff could have sought to make these amendments in 2022, long before the deadline to add or amend claims expired. Instead, Plaintiff waited nearly two years to act and provides no persuasive explanation for that undue delay. Consequently, Plaintiff has failed to demonstrate good cause under Rule 16 to extend the long-expired deadline to seek to add the proposed claims and modifications under discussion.

As Plaintiff has failed to meet the good cause standard under Rule 16, the Court need not undertake a Rule 15 analysis. *See Blue Gentian, LLC*, 2024 WL 4719560, at *6; *E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Nevertheless, the Court finds that, even if Plaintiff established good cause as required by Rule 16(b)(4), leave to amend the operative

---

[3] Indeed, Plaintiff included the DTSA as one of the asserted predicate offenses in its RICO conspiracy claim in the SAC, demonstrating it was well aware of the potential applicability of the DTSA in 2022, and could have either asserted it as an independent cause of action in the SAC or moved to amend to include it long before the deadline for such a motion expired. [*See* D.E. 97 at 34-35]. This bolsters the Court's conclusion that Plaintiff's request to amend the SAC to add a claim under the DTSA now is unduly delayed and imposes undue prejudice.

14

pleading to add a claim under the DTSA and to amend the tortious interference claim is not justified under Rule 15.

The same undue delay that prevents Plaintiff from meeting the good cause standard under Rule 16, also frustrates its efforts under Rule 15. Additionally, the Court concludes that permitting these amendments would impose precisely the kind of unfair prejudice that Rule 15 seeks to prevent. Plaintiff asserts that adding a claim under the DTSA will not cause prejudice, arguing there will be no change in legal theory, because "the NJTSA contains virtually identical definitions of trade secret, misappropriation, and improper means as the DTSA." [D.E. 271-1 at 20]. The argument is unpersuasive. Permitting Plaintiff to add this claim and modify its NJTSA and tortious interference claim after years of protracted fact discovery risks the imposition of significant expense on Defendants and further delay of a resolution in this action. This is especially true given the parties' previous history of serial discovery disputes and in light of the fact that the proposed DTSA claim seeks, among other relief, (a) to impose an injunction that "disgorg[es] all of [Plaintiff's] Trade Secrets in Defendants' possession, custody and/or control;" (b) "seizure by Federal law enforcement of Defendants' computers, computer hard drives, and other memory devices in Defendants' possession that could reasonably contain [Plaintiff's] Trade Secrets at issue;" (c) to appoint a Special Master; and (d) to "order[] an accounting of all books and records of Defendants" relevant to Plaintiff's asserted trade secrets. [D.E. 271-3 at 138-139, ¶¶ 2-5].[4] To avoid unfair prejudice to Defendants and because of Plaintiff's undue

---

[4] Defendants' opposition asserts the Court should deny Plaintiff's motion to amend, in part because Plaintiff's proposed DTSA claim would be futile. [*See* D.E. 274 at 12-13]. Specifically, Defendants assert that the allegations in the proposed amended complaint that relate to the DTSA fail to plausibly plead that Plaintiff has any trade secrets or protectable interests under the DTSA, and therefore do not meet the requisite 12(b)(6) standard to overcome futility. [*See id.*]. Because the Court denies Plaintiff's request to amend the complaint to add a claim under the DTSA on the grounds that such proposed amendment was unduly delayed and would impose undue prejudice, it does not address Defendants' futility argument.

delay in seeking these amendments, Plaintiff's request to add a claim under the DTSA and to modify its NJTSA and tortious interference claims is denied.

### 3. The Remainder of Plaintiff's Proposed Amendments and Supplements

The Court finds Plaintiff has not met its burden under either Rule 16 or Rule 15 to merit amending or supplementing the SAC to add the remainder of the TAC's proposed factual allegations, which include adding facts that were known or occurred before Plaintiff filed the SAC as well as factual allegations that occurred or were discovered after. Although the Court found a basis to allow Plaintiff to add the proposed supplemental facts specified earlier that narrowly pertain to Hans LLC and Bizarra, permitting Plaintiff to amend and supplement the complaint to add the remainder of proposed factual allegations presents a different situation.

Specifically, Plaintiff has not met the Rule 16 good cause standard to amend its previously pled claims for relief by adding factual allegations to "clarify" them, [*see* D.E. 271-1], because these proposed additions could have been included years ago, before the expiration of the deadline for such motions. The Court finds that Plaintiff unduly delayed seeking the proposed amendments. As for the proposed allegations in the TAC that occurred or were revealed after the filing of the SAC, Rule 16's requirement that a deadline for amending pleadings be set in the pretrial scheduling order is meant "to assure that at some point … the pleadings will be fixed." Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment). Further expansion of the factual parameters of this action, as the parties approach the conclusion of fact discovery, undermines the purpose of that deadline and imposes undue prejudice, especially because the proposed additions total over forty-five pages and nearly double the SAC.

In any event, even if these proposed amendments or supplements met the Rule 16 good cause standard, the Court finds that Plaintiff has not met the Rule 15 standard for either amending or supplementing the complaint to add the remainder of the proposed facts and allegations. Given the lapse of over two years between the filing of the SAC and this motion to amend, permitting these voluminous additions would unduly expand this action. That undue expansion poses serious prejudice to Defendants in the form of the expense associated with conducting significant additional discovery and preparing to defend against new allegations, all resulting in further delay of any resolution of this action. Finally, it also risks "render[ing] the complaint 'a moving target.'" *Blue Gentian, LLC*, 2024 WL 4719560, at *8 (quoting *Ramirez-Rodriguez v. W. New York Bd. of Ed.*, No. 18-17081, 2022 WL 2158965, at *3 (D.N.J. June 15, 2022)). Thus, in its discretion, the Court concludes that the equitable considerations of undue delay and undue prejudice warrant denial of Plaintiff's request to add the remainder of the proposed amendments and supplemental facts in the TAC.[5]

### 4. Plaintiff's Request to Remove Claims for a Permanent Injunction, Accounting, and Quantum Meruit

Finally, Plaintiff seeks to dismiss the claims in the operative complaint for permanent injunction, accounting, and quantum meruit. [*See* D.E. 271-1 at 4; D.E. 271-3 at 164, 170, and 180]. Defendants do not appear to oppose dismissal of these claims.

---

[5] The Court is aware that new counsel for Plaintiff was substituted in this matter on March 15, 2024, well after the deadline to amend the pleadings and to add parties passed and in the middle of rolling production of responsive documents from the Gmail Accounts. [*See* D.E. 229]. Still, courts cannot permit amendment of the complaint every time new counsel is substituted, because, as previously mentioned, this would protract discovery, impose undue prejudice on other parties, and risk permitting "a moving target approach" to motions to amend the complaint, a strategy this District has explained it "rightly reject[s]." *See Berk v. Ritz Carlton Condominium Association*, No. 19-20666, 2021 WL 5277459, at *4 (D.N.J. Nov. 12, 2021). While new counsel for Plaintiff may see faults and missed opportunities in the work of their predecessors, those misgivings do not justify a do-over, years after the expiration of the controlling deadline, to lard the original pleading with allegations known years earlier.

Plaintiff explains that it "proposes to dismiss [the claims for permanent injunction and accounting] as separate claims for relief but without prejudice to their availability as remedies for the remaining counts and proposed additional count." [*See* D.E. 271-1 at 4-5]. It seems, then, that Plaintiff intended to remove these claims in the TAC on the assumption that this Court would grant Plaintiff's proposed amendments, supplements, and modifications. For example, the proposed TAC modifies the claims for Unjust Enrichment and Constructive Trust and under the NJTSA to include a request for accounting. [D.E. 271-3 at 141, 172]. The TAC's proposed DTSA claim seeks a permanent injunction. [D.E. 271-3 at 138]. Because the Court denies the proposed additions that would include these remedies, in filing the TAC, Plaintiff may choose to keep the claims for a permanent injunction, accounting, and quantum meruit which the proposed TAC omits and that the motion to amend seeks to dismiss.

### III. ORDER

For the foregoing reasons,

**IT IS** on this 14th day of May 2025,

**ORDERED** that Plaintiff's motion for leave to file a Third Amended Complaint [D.E. 271] is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff may supplement the July 19, 2022 Second Amended Complaint by joining parties Hans Aerospace LLC and Bizarra Ventura Inc. and by adding their names to the list of Defendants as proposed at D.E. 271-3 at 91 and by adding the proposed factual allegations at D.E. 271-3 at 99, ¶¶ 29-30; D.E. 271-3 at 134, ¶¶ 180-182; and D.E. 271-3 at 143, ¶ 219 **only**; and it is further

**ORDERED** that the remainder of Plaintiff's proposed amendments and supplemental allegations in the Third Amended Complaint, including the proposed claim under the Defend Trade Secrets Act and the proposed modification of its New Jersey Trade Secrets Act and tortious interference claims, are **DENIED**; and it is further

**ORDERED** that the Third Amended Complaint may include the claims for Permanent Injunction, Accounting, and Quantum Meruit that Plaintiff had sought to dismiss; and it is further

**ORDERED** that, on or before May 28, 2025, Plaintiff shall file its Third Amended Complaint that includes the aforementioned permitted supplements only; and it is further

**ORDERED** that Defendants shall file their amended answer on or before June 18, 2025.

    /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge